UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AQUA BOX PRODUCTS, LLC, et al., <br><br> Defendants. | CASE NO. C12-0605-RSM <br><br> ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## INTRODUCTION

This matter comes before the Court on Defendants' motion for summary judgment. Dkt. # 54. For the reasons set forth below, Defendants' motion is DENIED.

## BACKGROUND

Plaintiff National Products, Inc. ("NPI") and Defendants Aqua Box Products, LLC, ABP Distributors, Inc. and Carmine LaCognata (collectively, "ABP") are competitors in the market of waterproof cases for electronic devices. NPI began selling its "Aqua Box" products August 26, 2005, which has since been continuously available on the website, www.rammount.com. Dkt. #

1  61, p. 7.  ABP formed its business in 2010 and entered into a distribution agreement with a

2  Chinese manufacturer, More Charm Ltd., to sell its cases under the name "Aqua Box."  Dkt. #

3  54, p. 2.  Before formally selecting "Aqua Box," ABP researched the name on the Internet and

4  with the Florida Secretary of State.  After determining that the mark was available, ABP filed a

5  trademark application with the United States Patent and Trademark Office ("USPTO"), which

6  found no pending marks that would bar registration as of December 9, 2010.  *Id.* at 3.  The

7  application was ultimately denied and abandoned on December 16, 2012.  *Id.* at 4.  In the

8  meantime, ABP sold its products between January 2011 and April 2012, until NPI filed an action

9  with this Court.  On April 25, 2012, the parties entered a Stipulated Permanent Injunction, in

10  which ABP was to cease using the "Aqua Box" mark and reasonably withdraw all products

11  bearing the label.  Dkt. # 9.  On December 4, 2012, the USPTO issued NPI registration of the

12  AQUA BOX® mark, Reg. No. 4,253,257.  With the conclusion of discovery, ABP seeks

13  summary judgment for:  (1) a determination that NPI is not entitled to monetary relief for its

14  federal and state trademark claims, (2) dismissal of NPI's Washington Consumer Protection Act

15  ("CPA") and unfair competition claims, and (3) dismissal of the unjust enrichment claim.

16  **DISCUSSION**

17  **A.  Summary Judgment Standard**

18  Summary judgment is appropriate where "the movant shows that there is no genuine

19  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

20  R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on

21  summary judgment, a court does not weigh evidence to determine the truth of the matter, but

22  "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d

23  547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d

24

744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. Federal and State Trademark Claims**

A finding of unfair competition or false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), may entitle the plaintiff to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). "[A] determination of damages in a trademark infringement action, including an accounting, is to be pursued in light of equitable considerations." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir. 1993) (citing *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 120 (9th Cir. 1968)). "Section 1117 confers a great deal of discretion on a district court in fashioning a remedy for trademark infringement." *Bandag, Inc. v. Al Bolster's Tire Stores, Inc.*, 750 F.2d 903, 917 (Fed. Cir. 1984). Washington trademark laws provide a similar standard for monetary relief, and the analysis will be treated the same.[1]

---

[1] RCW 19.77.150 provides "any court of competent jurisdiction . . . may require the defendants to pay such registrant all profits derived from and/or all damages suffered. . . . The court, in its discretion, may enter judgment awarding reasonable attorneys' fees and/or an amount not to exceed three times such profits and damages in such cases where the court finds the other party committed the wrongful acts in bad faith or otherwise as according to the

1. Accounting of Profits

While an accounting of profits follows as a matter of course after infringement is found, an award is not automatic. *Lindy Pen Co.*, 982 F.2d at 1405 (citing *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947)). "The intent of the infringer is relevant evidence on the issue of awarding profits and damages and the amount." *Lindy Pen Co.*, 982 F.2d at 1405 (citing *Maier Brewing Co.*, 390 F.2d at 123)). Where infringement is deliberate and willful, "a remedy no greater than an injunction 'slights' the public." *Lindy Pen Co.*, 982 F.2d at 1405 (citing *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982)). "Willful infringement carries a connotation of deliberate intent to deceive." *Lindy Pen Co.*, 982 F.2d at 1406. Thus, an accounting is proper where the defendant is "attempting to gain the value of an established name of another." *Id.* (citing *Maier Brewing Co.*, 390 F.2d at 123)). As a deterrence policy, courts will grant an accounting of profits in those cases where infringement yields financial rewards. *Lindy Pen Co.*, 982 F.2d at 1406 (citing *Playboy Enterprises, Inc.*, 692 F.2d at 1274). The equitable limitation mandates that an award "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a).

ABP argues that an accounting of profits is not appropriate because it selected the "Aqua Box" mark out of ignorance, not willful intent. Dkt. # 54 at 11. NPI maintains ABP willfully infringed, because it was on constructive notice of NPI's products in the market. Dkt. # 61 at 13-14. To show innocent intent, a party must conduct a reasonable investigation into a trademark's availability. *See Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) (finding that a "reasonable investigation into existing uses of the name" of a product is evidence of innocent circumstances of the case." RCW 19.77.140 further provides that a "registrant shall not be entitled to recover profits or damages unless the acts have been committed with the intent to cause confusion or mistake or to deceive."

1  intent). Mr. LaCognata, ABP's Managing Member, indicates that he only conducted a "cursory
2  investigation" of Google searches before going to the Secretary of the State of Florida. Shaub
3  Dec. ¶ 11, Ex. 10. Finding no "Aqua Box" registrations in Florida, he selected the name and
4  proceeded to obtain federal registration without consulting an attorney. Dkt. # 56, Ex. 10.
5  Almost a year after commencing sales, ABP retained counsel to aid in the trademark registration
6  process. LaCognata Dec. ¶ 4. Mr. LaCognata could not recall with certainty whether ABP
7  gained knowledge of NPI's existence during the course of its business, because an Internet
8  search of "Aqua Box" typically did not go beyond the first page of results. Dkt. # 65, Ex. 10.

9  While the Court accepts that ABP was unaware of NPI products, it does not clearly
10 evidence innocent intent in this case. *See Masters Software, Inc. v. Discovery Communications,*
11 *Inc.,* 725 F.Supp.2d 1294, 1305 (W.D. Wash. 2010) (finding that the defendant did not
12 innocently infringe on plaintiff's mark, because defendant should have known of its existence
13 after a simple internet search). ABP was a new company with no proven history when it began
14 selling its products. NPI, on the other hand, was an established company that had been selling its
15 "Aqua Box" cases for nearly five years by the time ABP came into the market. It is difficult to
16 conceive that a smaller company was unaware of a larger competitor's presence in the industry.
17 *See Lindy Pen Co.*, 982 F.2d at 1406 (finding infringement was unintentional where the
18 defendant had a major position in the industry and was clearly not trading on the plaintiff's
19 relatively obscure name). ABP's alleged reliance on counsel to continue using the mark also
20 carries little weight, because the nature and extent of the relationship is unclear. Counsel was
21 only retained after sales of the infringing products were well underway. There are no facts to
22 suggest ABP justifiably relied on counsel's representations thereafter, as the firm did not directly
23 advise ABP to continue using the mark. Rather, it appears ABP relied on counsel's silence as to
24

the mark's availability without explaining its role in the failed registration process. In light of all the considerations, ABP does not clearly demonstrate a lack of willful intent. *Cf. Hydramedia Corp. v. Hydra Media Group Inc.*, 392 F.Appx. 522, 523 (9th Cir. 2010) (affirming district court's summary judgment finding that a defendant's infringement was not willful because defendant adopted the mark before it knew plaintiff's mark existed, it relied on in-house counsel's advice to continue using the mark, defendant had a strong reputation, and there was no other evidence that it sought to mislead consumers or usurp plaintiff's goodwill). As such, NPI may be entitled to monetary relief for an accounting of profits.

2. <u>Award of Damages</u>

The Lanham Act, subject to equitable principles, also provides for "any damages sustained by the plaintiff." 15 U.S.C. § 1117(a). "A plaintiff must prove both the fact and the amount of damage." *Lindy Pen Co.*, 982 F.2d at 1407 (citing 2 J. Thomas McCarty, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984)). Damages are typically measured by any direct injury as well as lost profits that the plaintiff would have earned but for the infringement. *Lindy Pen Co.*, 982 F.2d at 1407. Since proof of actual damages is difficult to show, a court may award damages based on defendant's profits on an unjust enrichment theory. *Id.*; *see also Bandag, Inc.*, 750 F.2d at 918. Unlike for an accounting of profits, willful infringement is not a prerequisite when "plaintiff seeks the defendant's profits as a measure of his own damage." *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995). In any case, the plaintiff is only entitled to damages resulting from the infringement, and not a windfall. *Bandag, Inc.*, 750 F.2d at 918.

Under the unjust enrichment theory, ABP argues there are no profits to disgorge, as ABP suffered a net loss in excess of $82,000 by 2012. Dkt. # 54 at 16. NPI argues for damages based on its own sales figures that stagnated in the years of 2010 and 2011, in conjunction when ABP

sold its products. Davison Dec. ¶ 31. ABP began selling its products in January 2011, so NPI cannot attribute the decline in 2010 sales to ABP. However, NPI does provide evidence of confusion between the two "Aqua Box" products, in which customers contacted NPI regarding broken "Aqua Box" products purchased from ABP. Dkt. # 69, Ex. 28-31. Whether the confusion rises to the level of actual confusion on a purchasing decision is not determinative. But it presents an issue on whether any of NPI's lost sales post-2010 is attributable to ABP's infringement. Any relief claimed, however, shall be restricted to the time when infringement actually occurred.

### 3. Attorney Fees and Treble Damages

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Exceptional cases include cases in which the infringement is malicious, fraudulent, deliberate, or willful." *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1042 (9th Cir. 2003) (citing *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). As discussed above, there is a genuine issue as to whether or not ABP acted willfully, which may entitle NPI to recover an accounting of profits and attorney fees. Absent willful intent, NPI may nonetheless recover damages by showing lost sales or ABP's profits stemming from the infringement. Therefore, the Court declines to enter a summary judgment determination against NPI's claim to monetary relief.

### C. CPA and Unfair Competition Claims

The CPA prohibits any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To establish a violation, the plaintiff must show: "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring the plaintiff's business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered."

*Seattle Endeavors, Inc. v. Mastro*, 123 Wash.2d 339, 349 (1994) (citing *Nordstrom, Inc. v. Tampourlos*, 107 Wash.2d 735, 739 (1987)). Trademark or trade name infringement is a CPA violation that typically justifies an award of attorney fees and expenses. *Seattle Endeavors, Inc.*, 123 Wash.2d at 350.

ABP argues that the essential elements of the claim are not met. Specifically, that NPI fails to establish injury or satisfy the public interest requirement since it is a "sophisticated corporation." Dkt. # 54 at 15. First, "nonquantifiable injuries, such as loss of goodwill" are sufficient to meet the injury element of the CPA claim. *Tampourlos*, 107 Wash.2d at 740. Second, the public interest requirement is satisfied with a finding of infringement, and not simply one's status as a sophisticated corporation or not. This is not a per se rule, because "no cognizable public interest is established where the mark is weak and the infringement inadvertent." *Seattle Endeavors, Inc.*, 123 Wash.2d at 350. ABP does not dispute NPI's contention that the "Aqua Box" mark is strong, evidenced by federal registration and the large volume of sales associated under the name. Dkt. # 61 at 20. As discussed in the Lanham Act context, ABP has not sufficiently shown innocent intent. In light of the overlapping considerations, the Court declines to enter a summary judgment dismissal of NPI's CPA and unfair competition claims. *See Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, No. 08-1372, 2010 WL 1903431, at *11 (W.D. Wash. May 11, 2010) (finding the claims for relief under the Lanham Act and CPA are "congruous").

**D. Unjust Enrichment**

To prevail on an unjust enrichment claim: (1) one party must have conferred a benefit to the other, (2) the party receiving the benefit must have knowledge of that benefit, and (3) the benefit must be accepted or retained under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Cox v. O'Brien*, 150 Wash.2d 24,

1 | 37 (2009). Unjust enrichment may also apply to any loss suffered by the affected party, in which

2 | restitution is proper. *Chemical Bank v. Wash. Public Power Supply Sys.*, 102 Wash.2d 874, 910

3 | (1984). ABP argues that this claim is moot because it never benefitted from selling its Aqua Box

4 | products, resulting in a net loss of over $82,000 by 2012. Dkt. # 54 p.16. NPI argues that ABP

5 | actually profited from the infringement, as many of the expenses claimed are unrelated to the

6 | sales of infringing cases and not deductible. Dkt. # 61 p. 21. It further alleges that based on

7 | ABP's late-filed information, costs of an unrelated lawsuit were included in the profit and loss

8 | summaries of "Aqua Box" sales. Dkt. # 78, p. 3. Thus, there is an issue whether ABP retained

9 | any benefit from its sales of "Aqua Box" products, and the Court declines to dismiss NPI's

10 | unjust enrichment claim.

## CONCLUSION

12 | Having considered Defendants' motion, the response and reply thereto, all of the attached

13 | declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS

14 | that Defendants' motion for summary judgment (Dkt. #54) is DENIED.

16 | Dated this 5th day of April 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE